**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**HUNTINGTON**

**UNITED STATES OF AMERICA**

**v.** **Criminal No.: 3:23-cr-00005**

**DAVID K. SMTIH**
**WESTERN RIVER ASSETS, LLC and**
**RIVER MARINE ENTERPRISES, LLC**

**UNITED STATES SENTENCING MEMORANDUM**

The United States of America, by Erik S. Goes, Assistant United States Attorney and Perry D. McDaniel, Special Assistant United States Attorney for the Southern District of West Virginia, offer the following Sentencing Memorandum. David K. Smith, Western River Assets, LLC, and River Marine Enterprises, LLC are currently scheduled to be sentenced on April 8, 2024, at 11:00 a.m.

**OFFENSE AND RELEVANT CONDUCT**

The Smith Revised Presentence Investigation Report ("PSR") sets the adjusted offense level for defendant Smith at 18 prior to the consideration of reductions for the acceptance of responsibility and zero-point offender. PSR, Paragraph ("¶") 29. The parties previously agreed that 18 was the appropriate total offense level prior to consideration of the guided and unguided departures allowed under USSG §2Q1.3. PSR ¶ 5; Plea Agreement ¶ 10, ECF 46.

The applicable Guideline is USSG §2Q1.3, and the base offense level is 6 because the discharges into the Big Sandy River involved oil, which is not classified as a toxic water pollutant. PSR, ¶¶ 5, 13-14, 22; USSG §2Q1.3(a), comment. (backg'd); 33 U.S.C. § 1317; 40 C.F.R. § 401.15.

The PSR concluded, and the parties agreed, that three specific offense characteristics apply to Defendant's conduct. A four-level enhancement applies for discharge of a pollutant. *See* USSG §2Q1.3(b)(1)(B); PSR, ¶ 23; Plea Agreement ¶ 10. A six-level enhancement applies because the offense conduct resulted in a disruption of a public utility and a cleanup that required a substantial expenditure. *See* USSG §2Q1.3(b)(1)(B); PSR, ¶¶ 14-18, 23; Plea Agreement, Stipulation of Facts ¶¶ 7-8. A four-level enhancement also applies because the conduct involved a discharge without a permit. *See* USSG §2Q1.3(b)(4); PSR, ¶ 25.

The issue before the Court is what, if any, departures to the enhancements are appropriate given the nature of defendant Smith's conduct.

The special offense characteristic for discharge of a pollutant "assumes a discharge or emission into the environment resulting in actual environmental contamination." USSG §2Q1.3, comment. (n.4). The comment advises that a departure of up to two levels in either direction may be appropriate based upon harm, quantity and nature of the pollutant, duration of the offense, and

the risk associated with the offense. *Id.* Actual harm did result from the oil discharge. The City of Kenova shut down its water intake for three days. The Coast Guard supervised and funded a cleanup operation that cost over $1.8 million. PSR, ¶¶ 14-15, 17-18. Defendant Smith pleaded to a single event of discharge, the day of the sinking of the vessel, even though the risk to the Kenova water supply and the cleanup lasted multiple days. The United States submits that the Court should not depart downward, and should consider an upward departure of one level.

The special offense characteristic for disruption of a public utility or a cleanup requiring a substantial expenditure provides for a departure of up to two levels in either direction depending upon the nature of the contamination involved. USSG §2Q1.3, comment. (n.6). In this case, there was both a public utility disruption and a cleanup requiring a substantial expenditure. PSR, ¶¶ 14-15, 17-18. Consideration of the "substantial expenditure" enhancement includes "all reliable cleanup costs." *United States v. Phillips*, 367 F.3d 846, 857-59 (9th Cir. 2004). The enhancement has been applied for cleanup costs in amounts much less than the $1.7 million expended by the Coast Guard (exclusive of the money paid to the City of Kenova for its financial loss). *See United States v. Chau*, 293 F.3d 96, 100 (3rd Cir. 2002) (cleanup cost of $200,000); *United States v. Spatig*, 870 F.3d 1079, 1084-85 (9th Cir. 2017)(cost of $498,562); *United States v. Cunningham*, 194

F.3d 1186, 1202 (11th Cir. 1999)(costs of $147,716). The United States submits that the Court should not depart downward, and should consider an upward departure of one level because the oil spill required cleanup costs exceeding $1 million and also disrupted a public utility.

The special offense characteristic for a discharge without a permit provides for a departure of up to two levels in either direction depending upon the nature and quantity of the substance involved and the risk associated with the discharge. USSG §2Q1.3, comment. (n.7). This enhancement applies even in cases such as this where a permit for the discharge activity would not have been available. *United States v. Ortiz*, 427 F.3d 1278, 1284-85 (10th Cir. 2005). The oil spilled from defendant's vessel was of sufficient risk to require the City of Kenova to close its drinking water intake on the Big Sandy River. The quantity of oil spilled was sufficient to require a multi-week and very costly cleanup. The United States submits that the Court should not depart downward two levels.

A downward departure is justified because the spill was caused by defendant Smith's negligence, and not by knowing conduct. USSG §2Q1.3, comment. (n.3). Defendant Smith will argue that his conduct was less than negligent, and cite the strict liability basis of the charge to which he pled guilty. While defendant Smith did plead guilty under the Refuse Act, the totality of his conduct

indicates he was negligent in leaving a vessel in the Big Sandy River despite the inability of the vessel to propel itself upon the river or provide any useful function. PSR, ¶¶ 10-11. Had the matter gone to trial, the parties would have presented different theories about the cause of the sinking of the vessel. PSR, ¶ 12. However, there would have likely been no dispute about the dilapidated condition of the vessel.

Unlike the guided departures discussed above, the application notes do not provide any guidance on the amount of the downward departure for negligent conduct, other than to say that this departure applies to the specific offense characteristics (and thus not to the base offense level itself). *Id.* Likewise, the judicial record is lacking for examples where courts have discussed the appropriate level of downward departure for negligent or strict liability conduct under USSG §2Q. The United States respectfully submits the Court should consider a downward departure of no more than one half of the enhancements added (after consideration of the guided departures) for specific offense characteristics.

In sum, the United States takes the position that defendant's USSG sentence falls in level 8[1], resulting in an advisory range of 0 to 6 months in Zone A.

[1] This is in concurrence with the probation report up to the point of a specific downward departure of 6 under Application Note 3 which provides for a downward departure for negligent conduct, and possibly more for a strict liability plea. The United States suggests a downward departure of up to 6 (provided there were no other downward departures) would be appropriate. With a departure of 6 under

**RESTITUTION AND VICTIMS**

Violations of the Refuse Act do not trigger mandatory restitution. However, the Court has the authority to order restitution as a condition of probation or supervised release. 18 U.S.C. §§ 3553(a)(7), 3563(b)(2), and 3583(d); USSG §5E1.1, comment. (backg'd); *United States v. Harrison*, 741 F.3d 426, 431 (4th Cir. 2014).

The United States can be a victim entitled to restitution. *United States v. Phillips*, 367 F.3d 846 (3rd Cir. 2004). *See also United States v. Gibbens*, 25 F.3d 28, 32-33 (1st Cir. 1994) ("[I]t is by now settled that a government entity (local, state, or federal) may be a 'victim' for purposes of . . . [18 U.S.C. §§ 3663-3664] (and may be awarded restitution"). An order of restitution payable to the United States Coast Guard in the amount of $1,856,957.92, even for a limited time period and in payments commensurate with defendant's financial status, is warranted. The amount of the cleanup costs and the restitution claim were not contested by defendants during the PSR review process.

**18 U.S.C. § 3553(a) FACTORS**

The United States submits that a sentence involving some form of incarceration is appropriate for Defendant Smith's longstanding

Application Note 3, the advisory guideline would be reduced to 12, eliminating the third point for acceptance of responsibility.

neglect of an unseaworthy vessel moored in the Big Sandy River. Such a sentence would be consistent with Section 3553(a) factors addressing the nature of the offense and the need for restitution. 18 U.S.C. §§ 3553(a)(1),(7). Defendant Smith left an unseaworthy vessel moored in the Big Sandy for eight years during which the vessel was not adequately inspected for rust and other indices of deterioration. The Coast Guard paid over $1.8 million to remediate the damage caused by the sinking of the vessel and the resulting discharge of oil.

The Refuse Act provides for a minimum thirty-day sentence, should a sentence be imposed. 33 U.S.C. § 411. Such a sentence, even should it be served on home confinement, would be justified given the nature and circumstances of the offense. Defendant Smith was aware of the condition of the vessel, yet took no action to remove the hazard it posed to the water quality of the river.

As to the corporations, that is, Western River Assets, LLC ("WRA") and River Marine Enterprises, LLC ("RME"), both corporate entities are dissolved. (PSR ¶ 23 for both WRA and RME). Notwithstanding their dissolution and the default civil judgment entered against both companies (PSR ¶ 14 for WRA and RME), corporate deterrence is also a significant factor in determining a fair outcome and just sentence. Both corporations should receive the corporate maximum penalties for this criminal conduct, that is, five years of probation, a fine of $200,000 for each corporate

entity, and an order of restitution to be applied to each corporation jointly and severally in the amount of $1,856,957.92. This amount of restitution represents the amount of total restitution due and owing to the United States Coast Guard National Pollution Fund Center for the corporate conduct resulting in this environmental crime. This sentence would send a stout message to all corporate polluters irrespective of size or status that the financial consequences of environmental pollution are severe and such steps should be taken to prevent these sorts of outcomes that were seen in the criminal case.

Environmental Justice cases are a high priority for the Environmental Protection Agency and the Department of Justice. This case involved the pollution of an already-strained river system with thousands of gallons of oil. This criminal conduct caused real harm to communities downriver and contributed pollution to a degraded river system, harming the aquatic environment. Because defendant’s crime could have easily been prevented, the defendant and his corporations should face some measurable consequences for this criminal conduct.

## TIME AND WITNESS

The United States does not anticipate calling witnesses at the sentencing hearing. Thirty minutes should be sufficient to conduct the sentencing hearing.

Respectfully submitted,

WILLIAM S. THOMPSON
United States Attorney

s/Erik S. Goes
ERIK S. GOES
Assistant United States Attorney
WV State Bar No. 6893
300 Virginia Street, East
Room 4000
Charleston, West Virginia 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: erik.goes@usdoj.gov

s/Perry D. McDaniel
PERRY D. McDANIEL
Special Assistant United States Attorney
WV State Bar No. 4999
300 Virginia Street, East
Room 2630
Charleston, WV 25301
Telephone: 215-983-7558
Email: mcdaniel.perry@epa.gov

CERTIFICATE OF SERVICE

It is hereby certified that service of the foregoing "UNITED STATES SENTENCING MEMORANDUM" has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this the 1st day of April, 2024, to:

S. Benjamin Bryant
Carey Douglas Kessler & Ruby, PLLC
707 Virginia Street East, Suite 901
Charleston, WV 25301
E-mail: sbbryant@cdkrlaw.com

s/Erik S. Goes
ERIK S. GOES
Assistant United States Attorney
WV State Bar No. 6893
300 Virginia Street, East
Room 4000
Charleston, West Virginia 25301
Telephone: 304-345-2200
Fax: 304-347-5104
E-mail: erik.goes@usdoj.gov

s/Perry D. McDaniel
PERRY D. McDANIEL
Special Assistant United States Attorney
WV State Bar No. 4999
300 Virginia Street, East
Room 2630
Charleston, WV 25301
Telephone: 215-983-7558
Email: mcdaniel.perry@epa.gov